IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN M., | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 20 C 6451 |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1] | ) ) Magistrate Judge Finnegan ) ) |
| Defendant. | ) |

## ORDER

Plaintiff Kevin M. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a motion for summary judgment seeking to reverse or remand the Commissioner's decision. The Commissioner responded with a brief in support of affirming the decision. After careful review of the record and the parties' respective arguments, the Court affirms the ALJ's decision.

## BACKGROUND

Plaintiff applied for SSI on May 16, 2018, alleging that he was exposed to mold in his rental home and has been disabled since May 8, 2017 due to chronic obstructive pulmonary disease ("COPD"), diabetes, degenerative heart valve, a hole in the right lung, problems with his left big toe, and back pain. (R. 167, 191). Born in 1969, Plaintiff was

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

48 years old as of the alleged disability onset date, making him a younger person (under age 50), and he then switched categories to a person closely approaching advanced age (age 50-54). (R. 167); 20 C.F.R. § 416.963(c), (d). Plaintiff currently lives alone in a ground floor apartment with a "service dog" he claims is trained to bark if he passes out. (R. 46, 52). He has a Ph.D. in clinical psychology and spent approximately 18 years working as a health care clinic manager and a medical administrator. (R. 57, 192). Most recently, Plaintiff worked as a motel manager from March 2015 until May 8, 2017 when he quit due to his medical conditions. (R. 58, 60, 192). He has not engaged in any substantial gainful activity since the alleged disability onset date.

The Social Security Administration denied Plaintiff's application initially on October 17, 2018, and again upon reconsideration on January 24, 2019. (R. 75-100). Plaintiff filed a timely request for a hearing and appeared before administrative law judge Michael Pendola (the "ALJ") on October 1, 2019. (R. 34). The ALJ heard testimony from Plaintiff, who was represented by counsel, and from vocational expert Michelle Pagella (the "VE"). (R. 36-74). On October 23, 2019, the ALJ found that Plaintiff's COPD, obesity, asthma, hypertrophic cardiomyopathy, and hypertension are severe impairments, but that they do not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 21-24). After reviewing the evidence, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform light work involving: frequent climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; no concentrated exposure to cold, defined as less than 32 degrees Fahrenheit, or to extreme heat, defined as greater than 80 degrees Fahrenheit; no concentrated exposure to humidity, fumes,

odors, dusts, gases, or poor ventilation; and no exposure to hazardous machinery or unprotected heights. (R. 24-28).

The ALJ accepted the VE's testimony that a person with Plaintiff's background and this RFC could perform Plaintiff's past relevant work as a medical administrator, clinical director, and hotel/motel manager as generally performed. (R. 28). As a result, the ALJ concluded that Plaintiff was not disabled at any time from the May 8, 2017 alleged disability onset date through the date of the decision. (*Id.*). The Appeals Council denied Plaintiff's request for review on September 8, 2020. (R. 1-5). That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. §§ 405(g). See *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of his request for reversal or remand, Plaintiff argues that the ALJ (1) failed to consider certain medical records from the University of Illinois Hospital and Health Sciences in violation of the "five-day rule"; (2) improperly rejected visual limitations imposed by the state agency medical reviewers; and (3) erred in evaluating his complaints of dizziness/syncope. For reasons discussed in this opinion, the Court finds that the ALJ did not commit reversible error and his decision is supported by substantial evidence.

## **DISCUSSION**

**A.** **Standard of Review**

Judicial review of the Commissioner's final decision is authorized by the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). In reviewing this decision, the Court may not engage in its own analysis of whether Plaintiff is severely impaired as defined by the Social Security regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor

may it "'displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations.'" *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). *See also L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1151-52 (7th Cir. 2019). The Court "will reverse an ALJ's determination only when it is not supported by substantial evidence, meaning 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

In making its determination, the Court must "look to whether the ALJ built an 'accurate and logical bridge' from the evidence to her conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). The ALJ need not, however, "'provide a complete written evaluation of every piece of testimony and evidence.'" *Pepper*, 712 F.3d at 362 (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted)). When the ALJ's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

**B.    Five-Step Inquiry**

To recover SSI, a claimant must establish that he is disabled within the meaning of the Social Security Act. *Shewmake v. Colvin*, No. 15 C 6734, 2016 WL 6948380, at *1 (N.D. Ill. Nov. 28, 2016). A claimant is disabled if he is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment

4

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves considering whether: "(1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021). *See also Melvin J. v. Kijakazi*, No. 20 C 3284, 2022 WL 2952819, at *2 (N.D. Ill. July 26, 2022) (citing 20 C.F.R. § 416.920(a)). If the claimant meets his burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Butler*, 4 F.4th at 501.

**C.    Analysis**

    **1.    The "Five-Day Rule"**

Plaintiff argues that the case must be reversed or remanded because the ALJ violated the five-day rule by declining to consider records Plaintiff submitted from the University of Illinois Hospital and Health Sciences for the period October 2018 to March 2019 (the "U of I records"). Effective January 2017, the Social Security Regulations require a claimant to "submit or inform the ALJ of written evidence no later than five business days before the benefits hearing." *Shackleford v. Saul*, No. 3:19-CV-1278-TOF, 2020 WL 3888037, at *5 (D. Conn. July 10, 2020) (citing 20 C.F.R. § 416.1435(a)). *See also Michelle I. v. Kijakazi*, No. 1:20-CV-2674-MJD-JPH, 2022 WL 71729, at *7 (S.D. Ind.

5

Jan. 7, 2022). If a claimant does not comply with the five-day rule set forth in paragraph (a), an ALJ "'may decline to consider or obtain' the evidence unless certain circumstances are present" as set forth in paragraph (b). *Id.*

Plaintiff's counsel advised the ALJ that there were outstanding U of I records in a letter dated September 17, 2019 (9 business days before the October 1, 2019 hearing). (R. 256). Counsel indicated that he had first sought to obtain the records on August 28, 2019, and that "[a]dditional follow up for these records occurred" on September 6 and 17, 2019. (*Id.*). On September 20, 2019, Plaintiff submitted a memorandum in support of his claim for disability benefits and reiterated that he was still awaiting the U of I records. (R. 258). At the October 1, 2019 hearing, the ALJ noted that Plaintiff had produced the records on September 25, 2019 and stated they would "come in as an exhibit." (R. 37). In his October 23, 2019 decision, however, the ALJ invoked the five-day rule and declined to consider the U of I records because Plaintiff had submitted them less than five business days before the hearing, and the requirements of paragraph (b) "are not met." (R. 19). This was error. "The five-day rule does not require a claimant to obtain and submit all relevant records more than five days prior to a hearing; rather, it requires the claimant to 'inform' the ALJ of the records' existence by that deadline." *DeGraff v. Comm'r of Soc. Sec.*, 850 F. App'x 130, 132 (2d Cir. 2021). *See also* 20 C.F.R. § 416.1435(a). Plaintiff's submissions more than five days before the October 1, 2019 hearing adequately informed the ALJ of the missing U of I records and he should have admitted and considered them.

The Commissioner does not meaningfully argue that Plaintiff failed to comply with the five-day rule, but insists that any error the ALJ made in declining to consider the U of I records was harmless. (Doc. 25, at 4-5). *See Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th

Cir. 2022) (quoting *Butler*, 4 F.4th at 504) ('the harmless error standard applies to judicial review of administrative decisions, and we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result.'"). Plaintiff disagrees, claiming that the ALJ's decision to exclude the evidence was harmful because he "did not adhere to his independent duty to ensure there was a full and fair record." (Doc. 20, at 10).

It is well-established that a court "generally upholds . . . the ALJ's 'reasoned judgment' regarding how much evidence to gather, and any omission must be 'significant' – meaning, prejudicial – for the Court to determine that an ALJ abdicated his duty to develop the record." *Sylvester W. v. Kijakazi*, No. 19 C 4263, 2022 WL 1591622, at *3 (N.D. Ill. May 19, 2022) (quoting *Nelms v. Astrue*, 553 F.3d 1093, 1099 (7th Cir. 2009)). Plaintiff did not submit a copy of the U of I records to this Court (or, for that matter, to the Appeals Council), or provide any details concerning their substance aside from stating generally that they consist of medical records from his treating pulmonologist, Dean Schraufnagel, M.D., and from an unspecified "emergency medicine provider." (Doc. 20, at 10). But there is no dispute that the ALJ considered numerous other pulmonology, emergency medicine, and cardiology records from Dr. Schraufnagel and the University of Illinois dated May 2017 through October 2018. (R. 25-26, 274-80, 530-31, 542-43, 547, 584-87, 602-04, 607, 612, 614, 617, 620, 627).

The ALJ also had access to and reviewed records from pulmonologist Charles Beck Jr., M.D., the Ingalls Memorial Hospital emergency department, Northwestern Memorial Hospital, Plaintiff's primary care physicians (Wanda Hatter Stewart, M.D., and Jerome Buster, M.D.), and Plaintiff's cardiologist Lokesh Chandra, M.D., dated April 19,

2017 through July 24, 2019. (R. 25-26, 261-62, 286, 288, 290-91, 301-02, 323-25, 328-31, 335-37, 342-44, 353-56, 359-62, 365-68, 372-73, 422-23, 425-26, 444-45, 447, 449, 459, 467-71, 503-04, 517, 545-46, 661, 672-74, 744,, 749-50, 754-56, 769-72, 774-75, 787, 790, 824, 828, 850, 852, 862, 894-95). Plaintiff does not articulate what the additional U of I records reveal about his condition or functioning, or argue that they contain information that may have changed the ALJ's decision. *See Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.").

Viewing the record as a whole, the ALJ's failure to consider the additional U of I records is at most a harmless error and does not support remanding the case. Plaintiff's motion for summary judgment on this issue is denied.

**2. Visual Limitations**

Plaintiff argues the case still requires reversal or remand because the ALJ erred in failing to include visual limitations in the RFC. A claimant's RFC is the maximum work that he can perform despite any limitations. 20 C.F.R. § 416.945(a)(1); SSR 96-8p. "[T]he responsibility for the RFC assessment belongs to the ALJ, not a physician, [but] an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012). *See also* 20 C.F.R. § 416.927(f)(2).

On July 28, 2018, Plaintiff had an Internal Medicine Consultative Examination with Zaia Lachin, M.D. (R. 572-75). Snellen testing revealed that Plaintiff had 20/70 vision in both eyes with glasses, and a pin hole test was 20/40 on the right and 20/50 on the left. (R. 573). Based on these findings, consultative reviewer Richard Bilinsky, M.D.,

8

determined on October 16, 2018 that Plaintiff has unlimited near acuity but limited far acuity in the left eye. (R. 81). Reynaldo Gotanco affirmed this assessment on January 23, 2019 and restricted Plaintiff to frequent (as opposed to constant) work with small objects. (R. 95).

The ALJ determined that these opinions were unsupported by the record evidence and so not persuasive. (R. 27). Plaintiff argues that the ALJ did not provide a sufficient explanation for this finding and must have "played doctor" because the state agency consultants' opinions were "uncontradicted." (Doc. 20, at 12-13). This Court disagrees. Since Plaintiff filed his claim in May 2018, the ALJ was not required to "defer or give any specific evidentiary weight" to any medical opinion, including a treating physician's opinion. 20 C.F.R. § 416.920c(a). *See also* Social Security Administration, *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819 (Jan. 18, 2017). Instead, the ALJ was required to "evaluate the persuasiveness of each medical opinion based on certain factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other evidence in the claim or an understanding of Social Security disability policies and requirements." *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022). *See also* 20 C.F.R. § 416.920c(c)(1)-(5). An ALJ must explain how he considered the first two factors (supportability and consistency) and may but is not required to explain his consideration of the other factors. 20 C.F.R. § 416.920c(b)(2). "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion." *Michelle*

9

*D.*, 2022 WL 972280, at *4. "Consistency assesses how a medical opinion squares with other evidence in the record." *Id*.

The first record to address Plaintiff's vision was from treating physician Dr. Wanda Stewart, who documented a normal visual exam on May 2, 2017. (R. 367). Plaintiff's vision remained normal on May 17 and June 16, 2017, and he denied experiencing any visual changes on June 6, July 13, July 17, and October 19, 2017. (R. 324, 343, 355, 361, 468, 602). At an appointment with cardiologist Dr. Lokesh Chandra on October 12, 2017, Plaintiff merely reported that he was adjusting to new glasses. (R. 286). There is no further mention of Plaintiff's vision until July 24, 2018 when he went to the Ingalls Memorial Hospital emergency department with left foot bleeding and pain that started three days prior. (R. 552). An examination of his eyes was normal with no complaints of blurred vision or loss of vision. (R. 558). On September 10, 2018, Plaintiff made his first and only report of vision changes and diplopia (double vision) to his pulmonologist Dr. Schraufnagel. (R. 584). Seven months later, on April 24, 2019, Plaintiff once again denied experiencing any visual changes during an initial examination with primary care physician Dr. Jerome Buster. (R. 754). Plaintiff continued to deny visual changes and raised no complaints about his vision at follow-up visits with Dr. Buster on May 30, July 1, and July 11, 2019. (R. 744, 749, 769).

Plaintiff ignores most of these records and fails to explain how they support the opinions from Drs. Bilinsky and Gotanco that he can only frequently work with small objects. Even if the records did support the stated restriction, Plaintiff does not argue or demonstrate that his past medical administrator, clinical director, and hotel/motel manager positions that the ALJ found him capable of performing involve handling small

10

objects on more than a frequent basis. Viewing the record as a whole, any error the ALJ may have made in not better articulating his reasons for rejecting a visual limitation is harmless and does not support remanding the case. *Butler*, 4 F.4th at 504 (quoting *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011)) ("[T]he harmless error standard applies to judicial review of administrative decisions, and 'we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result.'").

### 3. Dizziness and Syncope

Plaintiff finally argues that the case requires remand because the ALJ failed to properly consider his dizziness and syncope. The only evidence of these symptoms comes from Plaintiff's own self-reports to physicians and hearing testimony. In evaluating a claimant's subjective symptom allegations, an ALJ must consider several factors including: the objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication; treatment and other measures besides medication taken to relieve pain or other symptoms; and functional limitations due to pain or other symptoms. 20 C.F.R. § 416.929(c); SSR 16-3p, 2017 WL 5180304, at *5, 7-8 (Oct. 25, 2017). "'An ALJ need not discuss every detail in the record as it relates to every factor,' but an ALJ may not ignore an entire line of evidence contrary to her ruling." *Benito M. v. Kijakazi*, No. 20 C 5966, 2022 WL 2828741, at *8 (N.D. Ill. July 20, 2022) (quoting *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022)). "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts*,

11

27 F.4th at 1279; *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support."). "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts*, 27 F.4th at 1278.

Plaintiff started complaining to Dr. Stewart of dizziness when standing and walking on May 17, 2017. He explained that he had been exposed to mold in his rental house and suffered an allergic reaction. (R. 359). A physical exam was normal and Dr. Stewart ordered some lab work and instructed Plaintiff to stay hydrated. (R. 360-62). On June 16, 2017, Plaintiff again told Dr. Stewart that he felt dizzy when getting up to walk, but it resolved within 1 to 2 minutes. (R. 353). A physical exam remained normal and Plaintiff admitted that he likely was not keeping up with his fluid intake. (R. 355). At appointments with Dr. Schraufnagel on July 17 and August 14, 2017, Plaintiff complained of being "orthostatic" (having low blood pressure) at various primary care visits and stated that he experienced "syncopal and near syncopal episodes." (R. 274, 602). Dr. Schraufnagel noted that such symptoms are not typical of asthma and indicated that he needed more information. (R. 604). When Plaintiff returned to Dr. Schraufnagel on October 2, 2017, he affirmatively denied having any dizziness (R. 277), though he told Dr. Chandra on October 12, 2017 that he did have episodes of dizziness. (R. 286).

Plaintiff did not mention dizziness again until June 25, 2018 when he told Dr. Schraufnagel that he experienced three episodes of dizziness and vertigo that year lasting 10-15 minutes, as well as dizziness with coughing. (R. 530). During his Internal Medicine Consultative Examination with Dr. Lachin on July 28, 2018, Plaintiff stated that he feels dizzy sometimes due to orthostatic hypotension (a drop in blood pressure when

standing from a seated or lying position). (R. 573). On October 17, 2018, Plaintiff went to the University of Illinois clinic due to a cold (he was homeless at the time), and told treaters that he would not go to a shelter because he "has a 'service dog'" that purportedly barks if he coughs and passes out. (R. 627).

On March 11, 2019, Plaintiff received treatment at Northwestern Memorial Hospital for hematochezia (rectal bleeding) and complained of lightheadedness occurring 3 to 4 times per week and a past syncope episode on January 26, 2019. (R. 660-61). Doctors recommended an upper endoscopy. (R. 662). Two days later, on March 13, 2019, Plaintiff went to Ingalls Memorial Hospital due to a near syncope event while walking on the sidewalk. (R. 819, 824). Plaintiff once again reported having a previous syncopal episode in January, but this time said it involved loss of consciousness. (R. 824). He also described having "dizzy spells" a year prior but conceded that testing was unremarkable. (*Id.*). Doctors administered IV fluids and discharged him in stable condition. (R. 822, 828). Plaintiff attended several more medical appointments between April 24 and July 5, 2019, and either failed to mention dizziness or affirmatively denied having that symptom. (R. 744, 748-50, 753-56, 864). On July 11, 2019, Plaintiff told Dr. Buster that he had experienced "5 episodes of passing out, including in the ED" (R. 772), but there is nothing in the emergency department records to support this assertion. Finally, on July 24, 2019, Plaintiff told Dr. Chandra that he had lost consciousness 7 times when sitting up and walking, most recently on July 6, 2019. (R. 774).

At the October 1, 2019 hearing, Plaintiff testified that he passes out when going from sitting to standing so must move slowly. (R. 43). He also claimed to "fall constantly," explaining that he had lost consciousness and fallen 6 times that year, and fallen due to

13

dizziness at least a dozen times that year. (R. 46-47). Though Plaintiff has a driver's license, he said that Dr. Buster instructed him not to drive because is "a danger to everybody else" with the "orthostatic changes" and "randomized passing out." (R. 50). Nothing in Dr. Buster's records supports this assertion.

The ALJ found Plaintiff's complaints of dizziness and syncope with "constant" falling inconsistent with the objective evidence, noting that there is no documentation of frequent falls in the medical records. (R. 27). *See Thorps v. Astrue*, 873 F. Supp. 2d 995, 1006 (N.D. Ill. 2012) (citing *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007)) ("[A] patient's subjective complaints are not required to be accepted insofar as they clashed with other, objective medical evidence in the record."). Plaintiff insists the "logical inference" is that dizziness and fainting "would ultimately result in falling" (Doc. 20, at 16), but there is no evidence he sought or received any fall-related treatment (e.g., for injuries, scrapes, or contusions), and doctors merely instructed him to stay hydrated and administered IV fluids. In addition, Plaintiff's Morse Fall Risk Scale score was zero on March 13, 2019 even though he presented with complaints of lightheadedness. (R. 835-36). Contrary to Plaintiff's suggestion, moreover, he was not regularly diagnosed with and treated for dizziness and near syncope. (Doc. 20, at 14, 15). As noted, Dr. Stewart assessed dizziness only two times on May 17 and June 16, 2017 (R. 355, 362), and doctors at Ingalls Memorial Hospital assessed near syncope once nearly two years later on March 13, 2019. (R. 828). On all three occasions, the sole remedy was more fluids. (R. 355, 362, 822).

Plaintiff objects that the ALJ failed to consider his dizziness and syncope together with his other impairments. (Doc. 20, at 16-17). Yet he does not discuss any specific

medical condition, identify limitations attributable to such a condition, or explain how his dizziness/syncope affects his overall functioning. Instead he claims that losing consciousness "would undoubtedly cause an individual to be off task in a work setting," and speculates that he would be off-task a work-preclusive amount of time (more than 15% of the workday). (*Id*. at 17). In making this argument, Plaintiff ignores the fact that neither state agency consultant opined that he would be off task at all, and the ALJ found their opinions largely persuasive (aside from the visual limitations discussed earlier). (R. 27). Plaintiff does not point to any contrary opinions or evidence in the record. *See Stewart v. Berryhill*, 731 F. App'x 509, 510 (7th Cir. 2018) ("Unsubstantiated claims are of course, no substitute for evidence.") (internal quotations omitted).

Viewing the record as a whole, the ALJ's assessment of Plaintiff's subjective statements regarding dizziness and syncope was not patently wrong and is supported by substantial evidence. *Dawson v. Colvin*, No. 11 C 6671, 2014 WL 1392974, at *10 (N.D. Ill. Apr. 10, 2014) (citing *Schreiber v. Colvin*, 519 F. App'x 951, 961 (7th Cir. 2013)) (an ALJ's credibility assessment "need not be perfect; it just can't be patently wrong."); *Bruno v. Saul*, 817 F. App'x 238, 241 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154) ("Substantial evidence is not a high hurdle to clear – it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"). Plaintiff's request to reverse the case for further consideration of this issue is denied.

## **CONCLUSION**

For reasons stated above, Plaintiff's Motion for Summary Judgment [19] is denied, and Defendant's request to affirm the decision is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

ENTER:

Dated: February 14, 2023

_____
SHEILA FINNEGAN
United States Magistrate Judge